Locke *v.* Hall.

## LOCKE *vs.* HALL.

*G. & M.* being partners in trade, and owing certain debts, took *C.* into partnership with them, constituting a new firm, under the style of *G. M. & Co.* The new firm received a transfer of all the effects, and the partners verbally agreed among themselves that it should pay all the debts of the old firm. The new firm afterwards become insolvent, its stock was attached by *L.* a creditor of *G. & M.* in a suit against them ; and was afterwards attached by the same officer, in the suits of other creditors against *G. M. & Co.* In an action brought by *L.* against the sheriff, for neglect to levy his execution on the goods, and for giving priority to the subsequent attachments against the new firm, *it was held,* that the goods were first liable to the creditors of the new firm ;—that no creditor of the old

Locke v. Hall.

firm could avail himself of the engagement of the new firm to pay its debts till he knew and assented to it;—and that his remedy on such agreement was to be sought only in an action against the new firm.

THE facts in this case, which came before the court upon a case stated by the parties, will be found in sufficient detail in the opinion of the Court.

*H. O. Alden*, for the plaintiff, maintained his right to priority of satisfaction from the priority of contract, it being against the old company; from priority of attachment; and from the express agreement of the parties among themselves that the new company should pay the debts of the old. *Gow on Partn.* 343—346; 4 *D. & E.* 720.

*Allyn*, for the defendant, cited *Pierce v. Jackson*, 6 *Mass.* 242; *Phillips v. Bridge*, 11 *Mass.* 242.

MELLEN C. J. delivered the opinion of the court at an adjourned session in *Cumberland*, in *August* following.

This is a special action on the case against the sheriff of *Waldo*, for an alleged neglect of *Isaac Allard*, one of his deputies, in not selling on execution certain personal property by him attached in the plaintiff's suit against the firm of *Gilbert & Mitchell*. The attachment was made on the 5th of *June* 1829; judgment recovered at *November* term following; and the execution was placed in the hands of *Allard* for service within thirty days after judgment. Having orders not to arrest the body of either of the defendants, he returned the execution in due season, in no part satisfied. Whether this action can be maintained, depends on the following facts. On the sixth of *August* 1828, *Sewall Gilbert* and *Samuel A. Mitchell*, having before that time formed a copartnership under the firm of *Gilbert & Mitchell*, became indebted to the plaintiff in the sum for which said judgment was recovered. In the month of *September* 1828, *William A. Chandler* became a member of the copartnership; and they assumed the name of *Gilbert, Mitchell & Company*. At the time this new partnership was formed, there

Locke *v.* Hall.

as a parol agreement entered into, that the existing stock, goods nd debts of *Gilbert & Mitchell,* should become the property of *Gilbert, Mitchell & Company;* and that said firm should pay the existing debts due from *Gilbert & Mitchell,* as well as its own debts which might be subsequently contracted. The consideration f the above agreement on the part of *Chandler* was, that he would be equally interested with *Gilbert & Mitchell* in the property and business of the second firm. It seems that this second rm failed in business, in *June,* 1829 ; but there is no fact in the ase tending to show that, when the second partnership was formed, ll the parties were not solvent and unembarrassed ; of course, we ust consider that they were ; and had a right to make the above entioned contract and disposition of the property of *Gilbert & Mitchell* to the second firm, though they were indebted to the aintiff ; 1 *Mad.* 589 ; 15 *Ves.* 558 ; and such a contract need ot be made in writing. *Gow on Part.* 277 ; 11 *Ves.* 3. After e second partnership was formed, it became indebted to *Morrill* al. who caused the same goods to be attached, on the same day t after the plaintiff's attachment. They recovered judgment at ly term, 1829 ; and their execution also was placed in the hands *Allard,* for service, within thirty days after judgment ; who sold the attached property thereon to satisfy the same. Until after e attachments were made, no notice was given by the second firm their before mentioned agreement to pay the debts of the first. e plaintiff claims a right to maintain this action in virtue of the ove agreement ; and insists that, as his attachment was prior to t of *Morrill* and others, the property attached should have been plied by *Allard* in satisfaction of his execution. The answer is, t the property, when attached, had belonged to the second firm, l the plaintiff's writ and execution were against the first firm ; and vas intended to be, because, the contract of the second firm was known by the plaintiff when the suit was commenced ; and it es not appear that it was known either by the plaintiff or *Allard,* ile the execution against *Gilbert & Mitchell* was in his hands. case of the insolvency of a firm, the debts due from it must be

first paid, before any of the property belonging to it can be legally applied in satisfaction of debts due from any one or more of the partners. This is an established principle. Hence the plaintiff wishes to avail himself of the engagement of the second firm. On the facts before us, was he entitled so to do? It is true that the second firm took and continued in open possession of the property transferred by the first, which perfected the transfer and vested the property in the second firm. *Gow.* 298; *Exparte Ruffin*, 6 *Ves.* 119; *Exparte Williams*, 11 *Ves.* 3. Yet, as before observed, the agreement as to the payment of the debts of the first firm was not known to the plaintiff, and, of course, he never could have assented to the substitution of the second firm as his debtors, which was ne-cessary to authorize him to claim against that firm. Thus " where *A*, a trader, being indebted to several persons, entered into partner-ship with *B*, and brought his stock in trade into the partnership, and by the articles of copartnership, it was agreed that the joint trade should pay the creditors of *A*, named in the subjoined schedule, it was held that a separate creditor of *A*, named in the schedule, whose assent, before the bankruptcy, to the agreement between the parties, could not be shown, did not by the articles become a cred-itor of *A* and *B*. *Gow.* 311, and cases there cited. In principle the case above put, seems to be exactly similar to the case at bar. But, had the plaintiff assented, we apprehend he should have made his claim and brought his action against the second firm, and shaped his declaration accordingly. *Exparte Peel*, 6 *Ves.* 604. The judgment and execution would then have given information to the officer as to priority of right, on whom to call and whose property to seize. If the parol promise was binding on the second firm, such would have been the proper course, had the transfer of promise been known. If the promise was not binding, then the legal prior-ity belonged to *Morrill* and others as creditors of the firm which they had credited. In these circumstances it would seem injustice to hold the defendant liable in damages, by considering *Allard* a wrong doer. We think that *Allard* was justified in obeying, not bound to obey his precept, and govern himself accordingly

the disposal of the property. It does not appear that he was conusant or ever informed as to any particular facts respecting the change and ownership of the property, and no indemnity appears to have been given to him. On the whole, our opinion is that in the circumstances in which he stood, he conducted properly in selling the goods upon the execution of *Morrill & al.* against the firm of *Gilbert, Mitchell & Company*, to whom the property belonged, and applying the proceeds of the sale in satisfaction of that execution; and that as there was no surplus, he was correct in returning the plaintiff's execution in no part satisfied. On these principles, according to the agreement of the parties, a nonsuit must be entered, with costs for defendant.